UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICKIE KELLEY,

      Plaintiff,

v.                                                    Case No: 8:22-cv-1560-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

### ORDER

      Plaintiff Vickie Kelley seeks judicial review of the denial of her claims for period

of disability and disability insurance benefits, and the partial denial of her claim for

supplemental security income.  As the Administrative Law Judge's (ALJ) decision was

based on substantial evidence and employed proper legal standards, the decision is

affirmed.

### BACKGROUND

**A.    Procedural Background**

      Plaintiff filed applications for a period of disability, disability insurance benefits,

and supplemental security income on February 19, 2016.  (Tr. 185–94.)[1]  The

Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr.

---

[1] Plaintiff filed subsequent applications for disability insurance benefits and supplemental security
income in November 2019 (Tr. 1180–91) that were consolidated with her previously filed applications
by the ALJ at the direction of the Appeals Council.  *See* (Tr. 734, 860.)

117–19, 120–22, 127–31, 132–36.)  Plaintiff then requested an administrative hearing. (Tr. 137–38.)   Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified.  (Tr. 32–75, 137–38.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 12–30.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–8.)  Plaintiff then appealed to the Middle District of Florida and the court reversed the ALJ's decision and remanded Plaintiff's case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  (Tr. 834–55, 856–57); *see also Kelley v. Comm'r of Soc. Sec.*, No. 8:19-cv-2791-AEP (M.D. Fla.), ECF Nos. 28, 29.

In accordance with the court's order, the Appeals Council vacated the ALJ's previous decision and remanded Plaintiff's case to the ALJ for further proceedings. (Tr. 858–62.)  On remand, the ALJ held a new hearing on November 8, 2021, at which Plaintiff appeared and testified.  (Tr. 770–804.)  Following the hearing, the ALJ issued a partially favorable decision dated April 15, 2022 finding Plaintiff to be disabled as of January 14, 2021.  (Tr. 730–66.)  The ALJ thus denied Plaintiff's claims for period of disability and disability insurance benefits because she had not been under a disability through her date last insured, December 31, 2018, and partially granted Plaintiff's claim for supplemental security income with an effective date of disability of January 14, 2021.  (Tr. 754.)

Plaintiff then filed a complaint with this court seeking review of the ALJ's April 15, 2022 decision.  (Dkt. 1.)  The case is ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, initially claimed disability beginning on July 31, 2013, and subsequently amended her alleged onset date to January 14, 2016. [2]  (Tr. 36, 85–86, 98–99.)  Plaintiff has at least a high school education and past relevant work experience as an auto deliverer.  (Tr. 752, 777, 793.)  Plaintiff alleged disability due to injuries to her back, a herniated disc in her lower back, major depression, post traumatic stress disorder (PTSD), anxiety, fatigue, severe headaches, chronic anemia, colon problems, and gastrointestinal problems.  (Tr. 85–86, 98–99, 863–64, 878–79.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 14, 2016, the amended alleged onset date. (Tr. 737.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, asthma, morbid obesity, major depressive disorder, and generalized anxiety disorder.  (Tr. 737.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments

---

[2] At her first hearing before the ALJ, Plaintiff amended her alleged onset date to January 15, 2016, which is Plaintiff's fiftieth birthday.  (Tr. 36.)  In the April 15, 2022 ALJ decision, the ALJ noted this amended alleged onset date, but according to the SSA, "individuals reach a particular age on the day before his or her birthday."  (Tr. 734 n.1 (citing 20 C.F.R. §§ 404.102 and 416.120(c)(4)).)  Therefore, the ALJ considered the amended alleged onset date to be January 14, 2016, the day before Plaintiff's fiftieth birthday.  (Tr. 734 n.1.)

that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (Tr. 741–43.)  The ALJ then concluded that Plaintiff retained

a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§

404.1567 and 416.967, except that Plaintiff can:

> frequently use the left upper extremity for overhead reaching;
> occasionally crouch, crawl, kneel, stoop, and climb ramps and stairs;
> never climb ladders, ropes, or scaffolds; and no work around high noise
> levels or hazards such as open moving machinery and unprotected
> heights.  The claimant can understand, remember, carry out, and exercise
> judgment for simple tasks in a work environment with few day-to-day
> changes in terms of work duties, work settings, or work processes.  The
> claimant should not work with the public.  The claimant can interact with
> coworkers and supervisors on a frequent basis, but these interactions
> should be no more than superficial or work-related.

(Tr. 743–44.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective

complaints and determined that, although the evidence established the presence of

underlying impairments that reasonably could be expected to produce the symptoms

alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the medical evidence and other evidence

in the record.  (Tr. 744–45.)

Considering Plaintiff's noted impairments and the assessment of a vocational

expert (VE), the ALJ determined that Plaintiff could not perform her past relevant

work.  (Tr. 752.)  Notwithstanding, given Plaintiff's background and RFC, the VE

testified that Plaintiff could perform other jobs existing in significant numbers in the

national economy, such as package sorter, routing clerk, and price marker.  (Tr. 753,

794.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and

the testimony of the VE, the ALJ found Plaintiff to be disabled under the Social Security Act beginning on January 14, 2021.  (Tr. 754.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1;

and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d

at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision and argues that the decision must be reversed for two reasons.  First, Plaintiff argues that the ALJ failed to properly consider the opinions of Plaintiff's treating psychiatrists.  (Dkt. 22 at 4–15.)  Second, Plaintiff argues that the ALJ failed to consider the combination of her impairments at steps three and four of the sequential evaluation process.  (*Id.* at 16–21.)  For the reasons that follow, Plaintiff's contentions do not warrant reversal.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in considering the opinions of her treating psychiatrists, Dr. Brie Pulas and Dr. Shirrin Ahmadi-Davis.  (Dkt. 22 at 4–15.)  Specifically, Plaintiff asserts that the ALJ ignored evidence in the record that bolstered the opinions, improperly relied on Plaintiff's noncompliance with her medications to discount the opinions, failed to consider Plaintiff's mental conditions outside of a clinical environment, and improperly gave more weight to opinions by the state agency psychological consultants.  (*Id.*)[3]  The court does not agree.

---

[3] To the extent Plaintiff attempts to assert additional arguments raised in a perfunctory manner, the court considers them waived.  *See, e.g.*, *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("an appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal"); *N.L.R.B. v. McClain of*

According to the regulations in effect when Plaintiff filed her applications for benefits,[4] a physician's statement reflecting judgments regarding the severity and nature of a claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, RFC, and physical and mental restrictions, is an opinion that requires the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011). When assessing the weight to be given to medical opinions, the ALJ must consider several factors, "including whether an opinion is well-supported and consistent with the record." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)); *see also Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 224 (11th Cir. 2019) ("In assessing the weight due to be afforded to medical opinions, the ALJ should consider the following factors: the examining and treatment relationship between the claimant and doctor; the supportability and consistency of the opinion with the record as a whole; the specialization of the doctor; and other factors that tend to support or contradict the opinion.").

Under the "treating physician rule" the ALJ must assign controlling weight to the opinion of a treating physician if the opinion "is well-supported by medically

---

*Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

[4] The Social Security Administration published new regulations on January 18, 2017, applicable to claims filed on or after March 27, 2017, that modified the requirements regarding opinion evidence. 20 C.F.R. § 404.1520c; *see Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). The parties agree that the old regulations apply to Plaintiff's claims (Dkts. 22, 25) and Plaintiff does not challenge the ALJ's decision in this regard.

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Hargress*, 883 F.3d at 1305 (citing *Winschel*, 631 F.3d at 1179).   If the ALJ assigns less than controlling weight to a treating physician's opinion, the ALJ must provide good cause for doing so.   *Winschel*, 631 F.3d at 1178–79 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).   "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).

The ALJ must also consider the medical opinion "together with relevant evidence in the record."   *Hand*, 786 F. App'x at 224 (citing 20 C.F.R. § 404.1527(b)). While opinion evidence is helpful, it is not dispositive.   *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (explaining that "the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion").   The ALJ must consider all the evidence of record and determine the RFC.   *See Spivey-Adams v. Acting Comm'r of Soc. Sec.*, No. 3:16-cv-1134-J-PDB, 2017 WL 4297246, at *12 (M.D. Fla. Sept. 28, 2017) (holding that the ALJ "fulfilled her duty under the regulations to assess [plaintiff's] RFC in light of all the evidence in the record").   In formulating the RFC, the ALJ is not required to refer to every piece of evidence so

long as the ALJ provides sufficient reasoning for the reviewing court to evaluate whether the ALJ considered the claimant's medical condition as a whole. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021).

Dr. Pulas treated Plaintiff from April 2016 until April 2020. (Tr. 482–89, 696–729, 1495–1515.) On July 18, 2018, Dr. Pulas completed a medical source statement assessing Plaintiff's ability to "do work-related activities on a day to day basis in a regular work setting" despite her mental impairments. (Tr. 687–89.) Within the statement, Dr. Pulas marked that Plaintiff had either "good" or "fair" ability to function in 15 different work-related activities. (Tr. 687–89.) The statement defined "good" as the ability to function is "limited, but satisfactory" and "fair" as the ability to function is "seriously and markedly limited." (Tr. 688.) In particular, Dr. Pulas opined that Plaintiff had "fair" or "seriously and markedly limited" ability to perform in "complex job instructions," "behave in an emotionally stable manner," "demonstrate reliability," "deal with work stresses," "deal with public," and "maintain attention & concentration," and that Plaintiff's impairments would cause her to be absent from work more than two times per month. (Tr. 687–89.)

In the decision, the ALJ gave Dr. Pulas's opinion "little weight because [it is] not supported by or consistent with the record, including the psychiatrist's own treating notes." (Tr. 750.) The ALJ found that Dr. Pulas's treating notes reflected that Plaintiff "was tolerating all medications well" and that "her medications were effective in reducing her symptoms." (Tr. 750–51.) The ALJ further found that Plaintiff's

"symptoms improved even further with medication adjustments, as she reported, on follow up May 30, 2018, mild anxiety symptoms that are stable and manageable." (Tr. 750.)  The ALJ also considered Dr. Pulas's mental status exam notes and found that they "showed intact memory, attention, and concentration, and appropriate insight and judgment" and that where Dr. Pulas's treatment notes showed increased symptoms, "exacerbations . . . were attributed to gaps in treatment history, periods of no medications, and running out of medications."  (Tr. 751.)

Dr. Ahmadi-Davis began treating Plaintiff in March 2020 and authored an opinion regarding Plaintiff's condition dated December 14, 2021. (Tr. 1504–06, 1576–91, 1655).  In her opinion, Dr. Ahmadi-Davis stated that Plaintiff's "symptoms limit her ability to function effectively in day to day activities [and] her mental health conditions have rendered her unable to find or sustain gainful employment." (Tr. 1655.)  The ALJ afforded Dr. Ahmadi-Davis's opinion "little weight because it is not entirely supported by the doctor's medication management notes or finding[s] on mental status exams." (Tr. 751.)  The ALJ found that "[d]espite [Plaintiff] being unable to obtain the correct dosage of [her] medication for more than one year, [Dr. Ahmadi-Davis] did not make any changes to her medication regimen and instructed [Plaintiff] to continue her current medications, which indicates that despite reports of severe symptomatology there was no indication of significant mental instability." (Tr. 751–52.)  The ALJ further noted that Plaintiff "did not require any voluntary or involuntary psychiatric hospitalizations" and that Dr. Ahmadi-Davis's "[m]ental

status findings showed intact thought processes, non-delusional thought content, good insight, appropriate judgment, and intact attention, concentration, recent memory, and remote memory."  (Tr. 752.)

### 1.  Consideration of other record evidence

Plaintiff first argues that the ALJ failed to consider evidence in the record that supported Dr. Pulas's and Dr. Ahmadi-Davis's opinions.  (Dkt. 22 at 5–15.) Specifically, Plaintiff argues that the ALJ ignored sections of the psychiatrists' treating notes and the notes of Licensed Mental Health Counselor Zoila Rey, which Plaintiff argues were consistent with the opinions of Dr. Pulas and Dr. Ahmadi-Davis.  (*Id.*) Defendant responds that the ALJ's reasoning for assigning "little weight" to Dr. Pulas's and Dr. Ahmadi-Davis's opinions is supported by substantial evidence and the ALJ adequately considered the evidence in the record pursuant to the applicable regulations.  (Dkt. 25 at 8–11.)[5]

Upon consideration, the ALJ's decision adequately considers the evidence of record, including the evidence Plaintiff claims the decision ignores, and is sufficient to demonstrate that the ALJ considered Plaintiff's medical condition as a whole.  *See Buckwalter*, 5 F.4th at 1326 ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the

---

[5] Defendant argues in a footnote that Dr. Pulas' opinion should be afforded less weight because it "amounted to nothing more than checking boxes."  (Dkt. 25 at 7 n.7.)  However, as Defendant concedes "the ALJ did not make the specific finding in his decision" (*id.*) and the court "may not accept appellate counsel's *post hoc* rationalizations for agency actions."  *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974)).

ALJ is not required to cite every piece of evidence in the record.").  In formulating Plaintiff's RFC, the ALJ provided a detailed discussion of Plaintiff's mental conditions and treatment, including discussion of Plaintiff's treatment with Dr. Pulas, her therapy with LMHC Rey, a 2016 consultative mental status evaluation by Dr. Lawrence Pasman, and a 2020 consultative psychological evaluation by Dr. Nydia Conrad.  (Tr. 747–49.)   The ALJ also considered Plaintiff's testimony regarding her mental symptoms in detail (Tr. 744), but concluded that "Plaintiff's statements about the intensity, persistence, and limiting effects of her mental symptoms . . . are inconsistent because they are not entirely supported by the record to the extent purported."  (Tr. 749.)

Further, although Plaintiff states that the ALJ "does not discuss at all the treatment notes from LMHC Rey" (Dkt. 22 at 5), Plaintiff also quotes from the same page of the ALJ's decision that cites LMHC Rey's treatment notes and states "[t]herapy notes from 2016 show within normal brief mental status exam findings and consistently state the claimant denied auditory and visual hallucinations" (*id.* at 7).  In assessing Plaintiff's mental impairments, the ALJ also considered that "[t]he record reveals significant gaps in the claimant's mental health treatment, as she did [not] return for individual therapy [with LMHC Rey] until September 22, 2017, after last being seen on September 26, 2016[.]"  (Tr. 747–48 (citing Tr. 645–68).)

Plaintiff further argues that "[n]one of Dr. Pulas's or LMHC Rey's treatment notes showed only 'normal exam findings' in 2016 or that [Plaintiff's] depression,

anxiety and PTSD was consistently improved" and the ALJ's "finding that Dr. Pulas's treatment records document improvement when [Plaintiff] is on medications . . . is inaccurate." (Dkt. 22 at 7–12.) However, contrary to Plaintiff's assertions, treatment notes from both Dr. Pulas and LMHC Rey in 2016 and later demonstrate mental status exam findings that support the ALJ's decision to give little weight to Dr. Pulas's opinion. For example, during her April 2016 examination with Dr. Pulas, although Plaintiff reported a depressed mood, a dysphoric affect, and auditory hallucinations, Dr. Pulas found Plaintiff's speech to be a normal rate and rhythm; her thought process was linear, logical, and goal directed; her thought content was non-delusional; she was alert and oriented; her attention, concentration, and memory were intact; and her insight and judgment were appropriate. (Tr. 723–24.) Dr. Pulas assessed Plaintiff to have similar mental status findings at Plaintiff's appointments on July 26, 2016; October 25, 2016; April 25, 2017; July 10, 2017; October 18, 2017; December 6, 2017; February 28, 2018; May 30, 2018; November 27, 2018; March 29, 2019; June 28, 2019; November 4, 2019; and December 31, 2019. (Tr. 698, 703, 706, 709, 712, 718, 720, 726, 1498, 1507, 1510, 1512, 1514.) Dr. Pulas's clinical impressions of Plaintiff during that time ranged from mild to moderately ill (Tr. 700, 704, 707, 710, 713, 1508, 1511, 1513, 1515) and Plaintiff repeatedly reported mild to moderate or stable symptoms and improvement in her symptoms with her medications. *See, e.g.*, (Tr. 698 ("Anxiety is mild in severity and includes anxious ruminations, feeling tense, difficulty relaxing. Symptoms are stable and manageable. Depression is mild in severity and has

improved somewhat."), 703 ("'She states [new medication] is more effective for her anxiety than the previous medication. . . .  Anxiety symptoms are mild to moderate . . . Depressive symptoms are mild[.]"), 1498 ("She states that the medications are helping. . . . anxiety is mild in severity and stable.  She is sleeping well with the trazodone. . . . She reports mild to moderate depressive symptoms[.]"), 1507 ("She is tolerating medication well without adverse effects."), 1509 ("There has been some improvement in depression and racing thoughts overall with Latuda, alprazolam is helpful for anxiety.  She reports continued mild anxiety and depressive symptoms in the context of chronic/psychosocial stressors."), 1512 ("[S]he reports [medication] has been helpful. Hallucinations are resolved. Depressive symptoms are reduced as well. Anxiety is mild in severity and stable."), 1514 ("Alprazolam is effective for anxiety. . . . She reports mild symptoms including feeling tense anxious ruminations difficulty concentrating difficulty relaxing.").

Mental status exams from Plaintiff's 2016 therapy with LMHC Rey all noted that Plaintiff's appearance was alert and oriented, her thought processes were stable and logical, her conduct was appropriate, she had a positive mood, her affect was stable and bright, and she reported no hallucinations.  (Tr. 665, 666, 667.)  LMHC Rey further conducted a psychosocial assessment of Plaintiff on September 22, 2017, in which she noted that Plaintiff had unremarkable restlessness and clear speech, a cooperative presentation, an anxious mood but an appropriate affect, that Plaintiff was alert and attentive with good concentration, Plaintiff had good memory and average

production of thought, she reported auditory hallucinations, but had a logical stream or process of thought and was able to attend to her activities of daily living. (Tr. 655–59.) Mental status notes from Plaintiff's continued therapy with LMHC Rey in late 2017 and into 2018 similarly noted that despite reporting auditory hallucinations, Plaintiff was alert and oriented, her thought processes were stable and logical, Plaintiff had appropriate conduct, a positive mood, and a stable and bright affect. (Tr. 645, 646, 647, 648, 649, 650, 651, 652, 653.)

Plaintiff similarly argues that the ALJ failed to consider Dr. Ahmadi-Davis's "treatment notes in which [s]he opined clinical impression was severe illness at many visits." (Dkt. 22 at 13.)[6] However, the decision reflects the ALJ's consideration of Dr. Ahmadi-Davis's treatments notes and Plaintiff's reporting of severe or worsening symptoms. (Tr. 751–52.) The ALJ considered these reports, but relied on Dr. Ahmadi-Davis's continued statements that Plaintiff was not receiving the correct dosage of her medication, the lack of adjustment to her medications, Plaintiff's lack of voluntary or involuntary psychiatric hospitalizations, and the mental status findings to discount Plaintiff's subjective reports. (Tr. 751–52.) Dr. Ahmadi-Davis's mental status exam findings also document that Plaintiff's speech was at a normal rate, volume, and tone; her thought processes were linear, logical, coherent, or goal-

---

[6] Plaintiff also argues that Dr. Ahmadi-Davis "documented worsening symptoms with clinical impressions of 6 defined as 'severe illness' (Tr. 1576–77, 1582–84) and 7 defined as 'extremely ill (Tr. 1585–87, 1589–90).'" (Dkt. 22 at 12–13.) However, the treatment notes cited by Plaintiff do not reflect that Dr. Ahmadi-Davis ever assessed a clinical impression of 7, "extremely ill." *See* (Tr. 1587–88, 1590–91.)

directed; she denied violent or suicidal ideations; her insight was fair and judgment appropriate; she was alert and oriented; her attention, concentration, and recent and remote memory were grossly intact; and her fund of knowledge and language use were within normal limits.  (Tr. 1505, 1580, 1583, 1587, 1590.)  Moreover, the ALJ found Plaintiff to be disabled as of January 14, 2021 (Tr. 754), and Dr. Ahmadi-Davis's clinical impressions of Plaintiff on March 25, 2020 and May 5, 2020 were that she was "moderately ill."  (Tr. 1505, 1580.)  Dr. Ahmadi-Davis's clinical impressions changed to "severely ill" only in November 2020, and after the date that Plaintiff was found to be disabled in 2021.  *See* (Tr. 1577, 1583, 1587–88, 1590–91.)

Accordingly, the ALJ provided good cause to afford little weight to the opinions of Plaintiff's treating psychiatrists, including that the opinions were inconsistent with the psychiatrists' own medical records and not bolstered by the evidence.  *See Winschel*, 631 F.3d at 1178–79.  The ALJ's decision was supported by substantial evidence in the record and demonstrates consideration of Plaintiff's medical condition as a whole. To the extent Plaintiff identifies other evidence in the record that she contends bolsters Dr. Pulas's and Dr. Ahmadi-Davis's opinions, the court cannot reweigh the evidence or substitute its judgment for that of the ALJ.  *Bloodsworth*, 703 F.2d at 1239 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].");  *see Miles*, 84 F.3d at 1400 ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

### 2. Compliance with medications

Plaintiff next argues that the ALJ erred in finding Plaintiff's non-compliance with her medications as reason to reject Dr. Ahmadi-Davis's opinion. (Dkt. 22 at 12–13.) Specifically, Plaintiff argues that "[a]n inability to afford treatment, in [Plaintiff's] case she had insurance problems, is not a legal reason to deny benefits" and the ALJ had a duty to investigate the reasons for Plaintiff's noncompliance. (*Id.* at 13.) Defendant responds that the ALJ's decision to assign little weight to Dr. Ahmadi-Davis's opinion was "not significantly based on a finding of noncompliance" and the ALJ did not commit reversible error. (Dkt. 25 at 12.) The court agrees with Defendant.

The Eleventh Circuit holds that "'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,' and 'poverty excuses noncompliance.'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). "Where the ALJ did not rely significantly on the claimant's noncompliance, however, the ALJ's failure to consider evidence regarding the claimant's ability to afford her prescribed treatment does not constitute reversible error." *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 921 (11th Cir. 2015) (citing *Ellison*, 355 F.3d at 1275)); *see also Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) ("if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's

failure to consider the claimant's ability to pay will not constitute reversible error") (citing *Ellison*, 355 F.3d at 1275).

Here, Plaintiff's noncompliance with her medications was not a principal factor in the ALJ's decision, nor did the ALJ rely significantly on Plaintiff's noncompliance in finding her to be not disabled prior to January 14, 2021. In the decision, the ALJ stated with respect to Plaintiff's noncompliance that "[d]espite being unable to obtain the correct dosage of the medication for more than one year, [Dr. Ahmadi-Davis] did not make any changes to [Plaintiff's] medication regimen and instructed [Plaintiff] to continue her current medications, which indicates that despite reports of severe symptomatology there was no indication of significant mental instability." (Tr. 751–52.) The ALJ continued that Plaintiff "did not require any voluntary or involuntary psychiatric hospitalizations" and cited normal mental status findings during that time. (Tr. 752.) Thus, the ALJ did not rely on Plaintiff's failure to follow a prescribed treatment that would restore her ability to work as a reason to deny her benefits. *See* (Dkt. 22 at 13 (citing *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990)).) Rather, the ALJ relied on Plaintiff's inability to take her prescribed medication due to insurance issues as a basis for further discounting Plaintiff's subjective complaints about her condition. Specifically, the ALJ found that despite being unable to take her medication, Plaintiff did not require hospitalization and Dr. Ahmadi-Davis neither changed her medication regimen to ensure that she would be able to take medication nor noted significant deficits in Plaintiff's mental functioning during that time. (Tr.

751–52.)  Plaintiff's inability to take her medications and the resulting lack of actions by Dr. Ahmadi-Davis therefore further undermined Plaintiff's statements regarding the severity of her condition.  (Tr. 747–52.)  Indeed, as discussed above, the ALJ cited multiple reasons, including the psychiatrists' own treatment notes and other medical evidence, to discount the opinions of Dr. Ahmadi-Davis and Dr. Pulas and those reasons were supported by substantial evidence in the record.  The ALJ therefore did not significantly rely on Plaintiff's refusal to take her prescribed medication as grounds to deny her disability and did not commit reversible error.  *See, e.g.*, *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 489 (11th Cir. 2012) ("any adverse inferences that the ALJ may have improperly drawn from Beegle's lack of treatment did not constitute a primary or significant basis for the ALJ's findings, and do not constitute reversible error"); *James v. Comm'r of Soc. Sec.*, No. 2:16-cv-436-FtM-MRM, 2017 WL 4251095, at *8 (M.D. Fla. Sept. 26, 2017) ("Here, the ALJ cited multiple reasons, none of which were conclusive, but when viewed together with the medical history and examination findings suggested Plaintiff is not as limited as is alleged.").

### 3. Environmental considerations

Plaintiff next argues, without citation to authority, that the ALJ's reliance on Dr. Pulas's mental status exam findings was "not sufficient to assign little weight to Dr. Pulas's opinion" because the ALJ should have considered how "Plaintiff's symptoms affect her when she is not in the safety of her doctor's office, but in a social or work environment."  (Dkt. 22 at 13–14.)  The court disagrees.  Pursuant to the

relevant regulations, the ALJ was required to evaluate whether the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). As discussed above, the ALJ sufficiently considered Dr. Pulas's opinion under these standards and provided sufficient reasoning for assigning the opinion little weight.

Moreover, the ALJ adequately considered Plaintiff's symptoms outside of a clinical environment, including her testimony regarding her activities of daily living such as that she "has symptoms of hearing voices almost daily, which make her angry and she does not like to be around people. . . . [s]he only socializes with her daughters and grandsons. . . . [s]he no longer reads or watches television because she does not remember well[, s]he does not go grocery shopping because she cannot get out of the car[ and s]he spends her day holding her dog." (Tr. 744.) Upon reviewing her statements regarding the intensity, persistence, and limiting effects of her mental symptoms, the ALJ found that "they are inconsistent because they are not entirely supported by the record to the extent purported." (Tr. 749.) The ALJ continued, with reference to Dr. Pulas's treatment notes, that:

> With respect to her auditory hallucinations, psychiatric treating record[s] show that she reported minimal or no hallucinations with optimal medication and dosage. There have been long periods of no reported auditory hallucinations. They appeared to return or increased secondary to running out of medications, lapses in medications, or significant situational stressors. Otherwise, they appeared to be well managed with medication. Moreover, no treating or examining provider noted observing her respond to internal stimuli. She had minimal reported side

> effects, which include excessive sweating and weight gain; however, she did not appear to report drowsiness/sleepiness per her testimony. The record also shows periods of mild and stable anxiety and mild depression, with medications. Mental status exams findings did not include any significant deficits in memory, attention, or concentration. She consistently denied suicidal ideation and has no history of voluntary or involuntary psychiatric hospitalizations.

(Tr. 749.) Thus, the ALJ found that the mental limitations assessed in her RFC "more than account[] for her supported symptoms," including that Plaintiff is limited to "understand[ing], remember[ing], carry[ing] out, and exercis[ing] judgment for simple tasks in a work environment with few day-to-day changes in terms of work duties, work settings, or work processes; no work with the public; and can interact with coworkers and supervisors on a frequent basis, but these interactions should be no more than superficial or work-related." (Tr. 744, 749.) Plaintiff does not challenge the ALJ's consideration of her subjective symptoms and the ALJ's consideration of those symptoms, including Plaintiff's testimony regarding her activities of daily living, is supported by substantial evidence as discussed in the decision.

### 4. State Agency Psychological Consultants

Finally, Plaintiff argues that the ALJ erred in assigning "great weight" to the disability determination explanations from the state agency psychological consultants, Dr. Maxine Ruddock and Dr. Renee McPhereson-Salandy, because those opinions did not consider Dr. Pulas's or Dr. Ahmadi-Davis's treatment of Plaintiff. (Dkt. 22 at 14–15.) Plaintiff also argues that the state agency psychological consultants relied only on an opinion from Dr. Pasman, which the ALJ afforded "no weight," and therefore

the consultants' opinions were "unsupported by anything in the record."   (*Id.*) Defendant responds that because the ALJ properly afforded "little weight" to the opinions of Plaintiff's treating psychiatrists, there was no error in giving "great weight" to the opinions of the state agency consultants. (Dkt. 25 at 13–14.)  The court agrees with Defendant.

Substantial evidence supports the ALJ's determination to afford little weight to Dr. Pulas's and Dr. Ahmadi-Davis's opinions and the ALJ's decision to afford great weight to the state agency opinions was not error.  *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) ("ALJ [] did not err in giving significant weight to the opinions of the state agency medical consultants . . . [where] the ALJ appropriately concluded that [treating physician's] opinion should be given little weight").  Further, nothing in the regulations precludes the ALJ from assigning great weight to the opinions of state agency consultants, who have not had the opportunity to review the entire record.  *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) ("even if the non-examining doctor was unable to review all of Cooper's medical records before making her RFC determination, she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as Cooper's testimony"); *Frizzo v. Comm'r of Soc. Sec.*, No. 6:19-cv-468-Orl-MAP, 2020 WL 2092839, at *4 (M.D. Fla. May 1, 2020) (citing Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2–3) ("in weighing the opinions of state agency physicians or psychological consultants who have not had

the opportunity to review all of the claimant's medical records before rendering an opinion, the ALJ who has access to the entire record including the claimant's testimony can determine whether the opinion is supported by and consistent with the evidence of record and whether to afford it great weight").[7]  Accordingly, the ALJ did not err in affording great weight to the opinions of the state agency psychological consultants.

As discussed above, the ALJ's decision adequately demonstrates consideration of the record evidence and Plaintiff's medical condition as a whole.  The ALJ provided good cause for assigning little weight to the Dr. Pulas's and Dr. Ahmadi-Davis's opinions and the ALJ's decision is supported by substantial evidence.  Plaintiff is not entitled to remand on this basis.

## B.  Combination of Impairments

Plaintiff next argues that remand is warranted because the ALJ failed to properly consider the combination of her impairments at steps three and four of the sequential evaluation process.  (Dkt. 22 at 16–21.)  In particular, Plaintiff argues that the ALJ failed to properly consider her gastroesophageal reflux disease (GERD),

---

[7] Plaintiff also perfunctorily argues that Dr. Ruddock's finding that Plaintiff would be "moderately limited in her ability to complete a normal workday would "preclude work due to absenteeism and inability to stay on task" and supports Dr. Pulas' opinion.  (Dkt. 22 at 15, 21.)  But formulating a claimant's RFC is strictly the province of the ALJ, and the ALJ need not defer to any medical opinion, even one that the ALJ finds to be persuasive.  *See, e.g.*, *Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) ("the ALJ's RFC assessment [does] not need to match or mirror the findings of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ"); *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:18-cv-503-Orl-18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."), *report and recommendation adopted*, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019).

gastroparesis, left and right ankle degenerative disease, chronic hip and low back pain, and post-traumatic stress disorder (PTSD), and that the ALJ would have found Plaintiff disabled if he had properly considered these impairments. (*Id.*) Plaintiff further asserts that the ALJ failed to properly follow the district court's and Appeals Council's remand instructions to consider the impairments and that the hypothetical posed to the VE at step five did not include all of Plaintiff's impairments, specifically her moderate functioning in all four areas of mental functioning. (*Id.* at 21.) Defendant responds that the ALJ properly considered the combination of Plaintiff's impairments and that Plaintiff has failed to show error by demonstrating that her impairments were severe or that they limited her ability to work. (Dkt. 25 at 16–22.) Upon consideration, Plaintiff's contentions do not warrant remand.

At step two of the sequential evaluation process, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. *Phillips*, 357 F.3d at 1237 (citing 20 C.F.R. § 404.1520(c)). If an ALJ errs in finding that an impairment is non-severe at step two, such error is harmless if the ALJ finds that the claimant has any severe impairment and continues in the sequential evaluation process. *See Heatly v. Comm'r Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010); *Tuggerson-Brown v. Comm'r Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional

impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.").

Following step two, the ALJ must "consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951; *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."). The ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). But an ALJ's statements that he considered whether a claimant's impairment or combination of impairments met a Listing or that he considered all symptoms in determining the claimant's RFC are sufficient "to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 951–52; *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding that it was "clear" the ALJ considered claimant's impairments in combination because the ALJ stated that "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity"); *Wilson*, 284 F.3d at 1224–25 (holding that the ALJ's finding, at step three, that claimant did not have an impairment or combination of impairments meeting a Listing constituted "evidence that [the ALJ] considered the combined effects of [claimant's] impairments").

- 26 -

In the decision, the ALJ found at step two that Plaintiff had severe impairments of lumbar degenerative disc disease, asthma, morbid obesity, major depressive disorder, and generalized anxiety disorder, and continued with the sequential evaluation process. (Tr. 737.)   In addition to her severe impairments, the ALJ considered the record and found that Plaintiff has the following non-severe impairments: anemia, bilateral ankle/foot joint degeneration, right shoulder tendinitis, left shoulder partial rotator cuff tear and mild osteoarthritis of the glenohumeral and acromioclavicular joints, GERD, status-post hernia repair, gastroparesis, and headaches. (Tr. 741.) The ALJ then continued with the sequential evaluation process. Thus, to the extent Plaintiff argues that the ALJ erred by not finding certain of her impairments severe at step two, Plaintiff cannot demonstrate error. *Tuggerson-Brown*, 572 F. App'x at 951; *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 982 (11th Cir. 2013) ("Indeed, since the ALJ proceeded beyond step two, any error in failing to find that Packer suffers from [] additional severe impairments . . . would be rendered harmless.").

The ALJ's decision also demonstrates sufficient consideration of Plaintiff's combination of impairments at the latter steps of the sequential evaluation process. In determining whether Plaintiff's impairments met or equaled a Listing at step three, the ALJ stated that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 741.)   The ALJ similarly stated that "all the claimant's medically determinable

impairments, severe and non-severe, have been considered in the formation of the residual functional capacity finding in decision" (Tr. 737), and that he "considered all the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Tr. 741.) Further, in formulating the RFC, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (Tr. 744.) These statements are sufficient to demonstrate consideration of all impairments in combination at steps three and four of the sequential evaluation process. *Tuggerson-Brown*, 572 F. App'x at 951–52; *Wilson*, 284 F.3d at 1224–25.

Moreover, the decision includes a detailed discussion of the record evidence sufficient to demonstrate that the ALJ properly considered all of Plaintiff's impairments in combination when determining whether she was disabled. With respect to her left and right ankle degenerative disease, chronic hip and low back pain, the ALJ provided a thorough discussion of the record evidence at each step of the sequential evaluation, which included discussions of Plaintiff's testimony, her medical records, and a March 2020 consultative exam. (Tr. 737–39, 741–42, 744–46.) With respect to her GERD and gastroparesis, the ALJ provided a detailed discussion of Plaintiff's medical records and symptoms at step two, which the ALJ incorporated into the later analysis. (Tr. 740.) For instance, the ALJ considered Plaintiff's complaints of "intermittent nausea, bloating, flatulence, bloating (sic) and alternating diarrhea and

constipation" and noted her procedure for a hernia repair in June 2016.  (Tr. 740.)  The ALJ further considered Plaintiff's complaints in December 2016, including having diarrhea three times per day, and her March 2017 referral to gastroenterology "for her ongoing complaints of intermittent abdominal pain, bloating, and fluctuating between constipation and diarrhea[.]"  (Tr. 740); *see also* (Tr. 575, 579.)  The ALJ stated that Plaintiff's symptoms during this time were controlled by medication and that she only reported occasional constipation, thus "her diarrheal issues seemed to have resolved[.]"  (Tr. 740); *see* (Tr. 571–72, 561–62, 550, 556.)  In December 2017, Plaintiff elected to undergo "EGD with Botox injection" in an attempt to relieve her "worsening" symptoms.  (Tr. 670.)  The ALJ found that following December 2017, Plaintiff "did not return for further follow up nor did she report any ongoing GI symptoms to other providers," and thus concluded that "[i]t seems her symptoms did improve with the injection[.]"  (Tr. 740.)  Plaintiff does not cite any evidence in the record that her gastrointestinal symptoms continued after December 2017, and as the Commissioner argues, "the mere existence of these impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard."  (Dkt. 25 at 19 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)).

The decision also reflects sufficient consideration of Plaintiff's PTSD and mental impairments.  Although the ALJ did not explicitly discuss any limitations from Plaintiff's PTSD, there is no rigid requirement that the ALJ specifically refer to every

piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court without sufficient information to determine whether the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Buckwalter*, 5 F.4th at 1326. Here, the ALJ's detailed discussion of Plaintiff's mental impairments was sufficient. Indeed, despite Plaintiff's argument that remand is warranted when "an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis" (Dkt. 22 at 20–21), Plaintiff has not identified any evidence in the record regarding her diagnosis of PTSD that the ALJ failed to consider. *See* (*id.* (citing Dr. Pulas's and Dr. Ahmadi-Davis's treatment notes and opinions and Dr. Ruddock's opinion, which, as discussed above, were all thoroughly considered by the ALJ).) In addition to the record evidence discussed above and throughout the decision, the ALJ also completed a Psychiatric Review Technique (PRT) at step two and concluded that Plaintiff had moderate limitations in four areas: (1) ability to understand, remember, or apply information; (2) interaction with others; (3) concentration, persistence, and pace; and (4) ability to adapt or manage oneself. (Tr. 742–43.) The ALJ then incorporated limitations related to Plaintiff's mental impairments into her RFC. (Tr. 742–44, 749–52.) Thus, the ALJ adequately considered the combination of Plaintiff's impairments in the latter steps of the sequential evaluation process. *See Burgin v. Comm'r Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that were was harmless

because the ALJ considered all of his impairments in combination at later steps in the evaluation process.")

To the extent Plaintiff argues that the ALJ failed to comply with the court's instructions on remand, the court disagrees.  "A reviewing court examines *de novo* whether the ALJ has complied with a remand order."  *Maxwell v. Comm'r of Soc. Sec.*, 778 F. App'x 800, 802 (11th Cir. 2019) (citing *Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989)).  "When specific instructions have been provided in a remand order, whether that remand order is issued by the Appeals Council or the federal court, the ALJ *must* do as it instructs."  *Russ v. Astrue*, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *6 (M.D. Fla. Mar. 20, 2009) (citing *Warren-Ward v. Astrue*, No. 1:07-cv-811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10, 2008)).  Failure to follow instructions on remand warrants reversal.  *Id.*; *see also Acree v. Comm'r of Soc. Sec.*, No. 6:20-cv-591-EJK, 2021 WL 2853557, at *2 (M.D. Fla. May 7, 2021).  However, "[f]ollowing a federal court remand, the ALJ may consider any issues relating to the claim, regardless of whether they were raised in earlier administrative proceedings."  *Mendez v. Comm'r of Soc. Sec.*, No. 20-14026, 2021 WL 3163765, at *2 (11th Cir. July 27, 2021) (citing 20 C.F.R. §§ 404.983, 416.1483).  "An ALJ may take any additional action that is 'not inconsistent' with the Appeals Council's order implementing the district court's remand order."  *Id.* (citing 20 C.F.R. §§ 404.977(b), 416.1477(b)).

Here, the Appeals Council instructed the ALJ to conduct "further proceedings consistent with the order of the court."  (Tr. 860.)  Plaintiff argues that ALJ failed to

comply with the district court's statement in its remand order that "[w]hile not the same as accidents, Plaintiff's gastrointestinal issues appear to present limitations as to Plaintiff's ability to perform sustained work activity." (Dkt. 22 at 16–18 (citing Tr. 842).) However, the court continued that "[t]he brief discussion by the ALJ of Plaintiff's gastrointestinal impairments and symptoms does not indicate that the ALJ fully considered such issues or their effect on Plaintiff's ability to perform work activities" and thus directed that the ALJ "more fully address Plaintiff's gastrointestinal impairments and symptoms and their combined effect on Plaintiff's ability to perform work activities." (Tr. 842.) Plaintiff does not argue that the district court's order mandates that the ALJ find that Plaintiff's gastrointestinal symptoms affect her ability to work. Nor could she. The court's order on remand required the ALJ to more thoroughly consider her gastrointestinal impairments, and as discussed above, the ALJ complied with that directive.

The same is true with respect to Plaintiff's PTSD and mental impairments. In its order, the district court noted that "[t]he ALJ's decision simply glosses over the mental health treatment records, indicating primarily that Plaintiff presented with 'largely normal' mental status findings [and w]ithout more, it is unclear whether the ALJ considered Plaintiff's condition as a whole." (Tr. 846.) The court therefore instructed the ALJ to "address whether Plaintiff's anxiety, PTSD, or auditory hallucinations limit her ability to perform work activities and, if so, the extent of such limitations." (Tr. 846.) As discussed at length above, the ALJ complied with that

directive and adequately considered Plaintiff's mental impairments, symptoms, and treatment. *See, e.g.*, *Page v. Comm'r of Soc. Sec.*, No. 6:21-cv-258-LHP, 2022 WL 1619168, at \*7 (M.D. Fla. May 23, 2022) ("[T]he ALJ complied with the directives of the Vermont district court's remand order, as well as the order of the Appeals Council, which merely directed the ALJ to reconsider Dr. Clay's opinion (*i.e.*, requiring a 'redetermination' as to whether Dr. Clay's opinion was entitled to controlling weight,[] as well as the other medical opinions of record and Claimant's subjective complaints.").

Finally, Plaintiff argues that the hypothetical posed to the VE was flawed because it did not comprise all of Plaintiff's impairments. (Dkt. 22 at 21.) To constitute substantial evidence, the hypothetical pose to the VE must account for all of the claimant's impairments. *See Wilson*, 284 F.3d at 1227. However, the hypothetical question does not need to include limitations or impairments properly rejected by the ALJ. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 742 (11th Cir. 2008) ("the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citing *Wilson*, 284 F.3d at 1227). As discussed above, Plaintiff has not demonstrated that the ALJ erred in failing to consider the combination of her impairments or in formulating her RFC, and the hypothetical posed to the VE was therefore not in error.

**CONCLUSION**

Accordingly:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on August 16, 2023.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record